Judge Jackson Acumi, I must tell you that every once in a while my Wi-Fi goes off. Okay. I'll raise my hand if it happens while we were trying desperately to stay in. I haven't missed much because of my wonderful helper here but, you know, I'll re-listen to what was said. Thank you and I'll be on the lookout for your hand. Yeah, and I'll try and keep it quiet. Okay, thank you. We'll call the next case, fourth case of the morning, Jordan v. M&T Bank, appeal number 25-1482. We have two counsel joining us remotely. Oh, I hope their Wi-Fi is better than mine. And can you confirm by nodding that you can hear us okay? Okay, excellent. Then we will begin with Mr. Cento. Thank you, Your Honor. May it please the court, this appeal turns on one issue, whether the district court improperly resolved a factual dispute that belongs to a jury. Under Rule 56, when evidence supports two competing inferences, the case must be tried. And here the record contained documentary, system level, and third-party evidence showing that M&T Bank entered into a standalone refinancing agreement with only one of two co-borrowers. Mr. Cento, can I start us right off? Let's assume Ms. Jordan is correct and there was a new loan. There was a second loan. That's how she views it. That's what you've argued. Is she still liable under the terms of both the original loan and the DBP program? Is she still liable for that second loan? And if so, what would be incorrect with the bank reporting her liability, her outstanding balance, her deficiency to the credit reporting agencies? No, she is not liable. The first loan was paid by the second loan. This is what the internal documents of the bank itself show. These are the terms of the Deficiency Balance Program itself. The first loan was paid and it's shown in the records that the proceeds of the second loan were used to pay the first loan. So she can't be liable for the first loan because the balance of that loan is zero and that loan was closed. She can't be liable for the second loan because she didn't consent to the second loan. She did not authorize the second loan, which is a term that is required by the program itself. Is what you're saying, does that amount to a counterclaim, defense, offset, or claim of any kind or nature with respect to the original loan documents, which that's language I'm reading from the DBP letter. Why would we be wrong to think what you're saying sounds like some sort of counterclaim, defense, offset, or claim of any kind or nature with respect to the original loan documents? It's not a counterclaim. It's just, this is just factually true. The records show, the bank's own records show that the first loan was paid in full and closed. The records, the bank's own records show that the Deficiency Balance Program required authorization, either verbal or written. They got neither from my client and therefore she can't be liable for the second loan. These are just factual matters. It's not a defense of any kind. This is just what happened. What do we do with the language in the original loan document that says the bank can exercise any right without notice to her about the deficiency, any money left over after they sell the truck, any money left over to be paid? You don't need to do anything with that language. That loan was paid in full. That's what the records show. The terms of the Deficiency Balance Program expressly describe that program as a rewrite, as a new loan. That program requires either verbal or written authorization, neither of which they got from my client. The terms of the program expressly permit a standalone arrangement where only one of two co-borrowers participates. The internal records of the bank show that the original loan was paid in full and that it was closed on May 29, 2019. The first loan is paid. It's in full, closed. The bank could have done many things that it didn't do, but what it did do is it refinanced the first loan, used those proceeds to pay, used the proceeds of the second loan to pay the first loan. That is in their own records. For example, in the record on page 78, the internal records of the bank for the first loan state that it was a repossessed refinance. They show that the loan on, this is page 93 of the record, that was paid in full. On page 94 of the record, again, these are all references to the bank's internal account documents, show that the loan was closed on May 29, 2019. The bank then reported simultaneously at the same time that they closed this loan, they reported it as closed. They reported it as closed due to refinancing. Then they reported the second loan as a refinance. That is what they told TransUnion, Equifax, and Experian. All of the reporting to the consumer reporting agencies was the same. All of those agencies testified in their affidavits. May I ask you, Mr. Cento? Yes, ma'am. If it's a new loan, I'm working with you here, and it starts from scratch, starts from time zero with a new loan. Why then does the bank's letter in February 2019 talk about reducing your monthly payment if it's a new loan? Um, language like that. Because it did reduce the co-borrower's monthly payment, it reduced his monthly payment, the monthly payment he and the bank agreed to on this second loan. It did do that. But that doesn't negate what happened. Every piece of evidence within the bank's internal system, everything that the bank told the consumer reporting agencies, all of it, says this loan, first loan was refinanced, paid in full, closed, and that a second loan was created and reported as a second loan. This was the testimony of all three consumer reporting agencies, and the district court ignored every piece of that evidence. And all the inferences that can be drawn from it made no inferences in our favor, the non-moving party on this subject. The idea that there was just simply an account number change is also refuted by the bank's own records. Again, evidence ignored by the district court. The bank's ARC report, these records I keep referring to, only reference that new account number once, and the reference is a notation that that account is being created. The records themselves don't show any change of account number. In fact, there's not a single piece of evidence that was introduced in our case that that account number ever changed other than the testimony of the bank itself, which, again, contradicts its own internal records and the reporting that it made to the consumer reporting agencies. And Mr. Sintel, you're into your rebuttal time. Would you like to maintain it? I'll reserve the remainder of my time. Thank you, Judge. Mr. Noonan. May it please the court, James Noonan on behalf of the Appley Defendant in this matter, M&T Bank. Mr. Noonan, can you speak up? We can't hear you very well, or at least I can't. Can you hear me now? We can hear you, but I think you might need to shout a little bit. Okay, I will speak loud. Council has accurately framed the critical issue in this case as to the, I think the only dispositive issue, whether or not the DBP program constituted a new loan or refinancing, or was it merely a plan to pay off the deficiency balance on the extant auto loan? The facts in this case point to only one conclusion, and I'll get to Council's comments on the other points, but the critical and dispositive fact is that the underlying auto loan was never canceled or satisfied. That is undisputed in the record. And under federal consumer finance law and the numerous cases and authorities we there, in addition to New York law, which governs this auto loan agreement, the loan will not be deemed a refinancing or a new loan unless the original loan has been canceled or satisfied. Again, that fact is dispositive. I think the district court rightly focused on that fact and reached the, I think, the correct determination that the DBP program was what it purports to be, which was a payment plan for the payment of the deficiency balance on the auto loan following the repossession. Do you need us to fine for you on this point in order to prevail on appeal? Because it does seem to me, Ms. Jordan has introduced evidence where even the bank calls it a new loan, where even the bank calls it a refinance. Why is that not enough for a reasonable jury to find that there were two loans? Because in order for a jury to find there were two loans, the jury would need to find that the underlying loan was not canceled or satisfied. So regardless of what the bank calls it, regardless of what the plaintiff calls it, regardless of what the credit agencies call it, if there's not evidence of a satisfaction or cancellation of the underlying agreement, then the DBP program and anything following that is not a new or refinanced loan under the law. So, you know, the, I think the statements that council makes about these references to rewrite and a new loan and refinance are, they're certainly there. I'm not going to dispute it, but again, we're talking about summary judgment and at summary judgment, in order to create a genuine issue of material fact, it can't be a metaphysical or hypothetical idea that there is some evidence out there that cuts against the dispositive, undisputed evidence that the underlying loan was never canceled or satisfied. Perhaps you are answering my question, but let me ask it again in case I buried it. Let's assume we disagree with you. And we say, look, all the words strewn about this record seem to be pointing in two different directions, enough for a jury to have different opinions. Do you still, can you still prevail on what was reported to the credit agency not being inaccurate? Well, yeah, well, I, that, yes, we can, because what our investigation, the standard and under FCRA, the Federal Credit Reporting Act for the data furnishers obligations is to conduct a reasonable investigation. And the evidence of record clearly shows that we investigated each one of the ACBDs, the complaints, and checked them against the original loan and determined that the accounts were being reported correctly because the current, the one and only loan, which was the auto loan, was unpaid. So if they were wrong, if there's a legal conclusion that they were wrong, that this is second, that this was a refinanced loan, as plaintiffs suggest, that would be a legal determination. And FCRA does not govern legal determinations. The question is whether, if we believe that this loan was in fact the original loan and nothing else and reported it as such and did the investigation we did, the plaintiff or the defendant prevails under FCRA. So, but again, the District Court agreed with our position that we need not go there because the evidence overwhelmingly demonstrates that this loan is the original auto loan that was never satisfied, never, never, never canceled. In addition, there was unrebutted testimony in the record that, from the bank, that if this were a new loan, then there would be evidence of a new loan, such as underwriting, an application, employment verification, income verification, and a new loan agreement, all of which the Truth in Lending Act would require a consumer lender to do. None of that exists here for that reason that this is not a new loan. Is there anything to the response that, one, perhaps the DBP program might not require all of that extra stuff if it were a new loan? And two, Ms. Jordan is alleging that the bank violated FCRA, so it wouldn't be too far-fetched to think maybe the bank violated the Truth in Lending Act, too. So, what about that? Yeah, except, again, if you go back, if we go back to the Truth in Lending Act and look at what's required, the Truth in Lending Act and the cases that interpret it clearly say that where the loan terms have been modified, like the payment terms, does not make it a new or refinanced loan. There still has to be a cancellation or satisfaction of that underlying obligation. So, the bank, you know, theoretically could have violated TILA, maybe, but in this instance, it didn't because the underlying loan was not satisfied. And the law says that, it goes further, the law says that by extending payment terms does not make this, that agreement a new loan. And I, you know, I point, I think, to the bank's description of the loan to the consumer in this case, that letter you referred to, Justice Jackson, February 19th, you know, it says, it doesn't say new loan, it says payment plan. And it very clearly says that the underlying obligation stays in force and that your monthly payments are reduced. Your monthly payments from what? From the original loan agreement. And it says, upon receipt of the second payment, you will receive a new account number. And it's that new account number, which was the genesis of this case, that plaintiff insists represents a new loan. The evidence, I think, overwhelmingly says, it can only reach one conclusion, that this was not a new loan, but a renumbering of the existing account, which is done all the time in consumer finance and for a variety of reasons. So that is not, the fact that it was an account number change does not move the needle or affect the underlying dispositive issue of whether or not this was a new loan. I want to bring one point, in a few moments I have left, that council made with respect to evidence that the loan was canceled but satisfied because there was evidence in the record that the loan was paid in full and proceeds were used, I think this comment, proceeds were used to pay off the first loan. There's no evidence of that at all. The Schmidt affidavit ending very clearly says, this loan was not paid off, there were no proceeds used to pay off the loan, and the loan today has still not been satisfied or paid off. So the fact that there may be internal documents, how their system organizes the loan and sets it up in their system, showing that old loan number, we're closing it down, we're moving with the new loan number to deal with the payment plan, is not evidence that there was a new loan that was paid in full. No money was exchanged for purposes of the DBT. Unless you have any further questions, I rest my case and ask that the decision of the District Court be approved. All right, thank you. Mr. Cento. Thank you, Your Honor. Do you want to pick up where Mr. Noonan left off and tell us about what evidence Ms. Jordan has that the proceeds were fully paid? It's right there in their records, Your Honor. This is appendix page 127. Booked the 2001 loan pending proceeds. Completed DBP forward to ops booking and proceeds. It's in their records. As for whether or not the loan was satisfied, that is also in their records. It is appendix page 91 through 94, appendix 65, and appendix 78. And on all of those pages, it shows that the loan was satisfied. The loan was also canceled. It was closed. This is page 94 of the appendix. All of these things are in their internal records. They closed the loan. They used the proceeds of the second loan to pay off the first loan and then reported that loan with a zero balance and closed. It is satisfied, canceled, closed, no longer owed. That is what happened. This, the argument that counsel's making is all after the fact, the argument that they came up with to justify why they kept saying in their reporting and in response to every ACDV that Ms. Jordan was somehow liable for a loan she never consented to. So we believe the court should reverse and remand. Thank you. Thank you. Thank you to both counsel. We'll take the case under advisement.